FRANK P. RUSSELL, RECEIVER, v. RUSSELL-ROBINSON COMPANY.

Argued June 5, 1914—Decided July 10, 1914.

1. Upon filing the circuit record and *postea* a judgment *nisi* may be entered, upon which, notwithstanding a rule to show cause has been allowed, an execution may issue, which will, however, be rendered void if such rule to show cause be made absolute, but which, if such rule be discharged and judgment final be entered as of the date of such judgment *nisi*, remains in full force as to lands of which the judgment debtor was seized at the time of the actual entry of such judgment *nisi*.

2. On May 20th, 1913, plaintiff obtained a verdict in an action in the Supreme Court. On May 27th, 1913, a rule to show cause why this verdict should not be set aside was allowed. On June 3d, 1913, judgment *nisi* was entered upon the *postea*. On June 10th, 1913, a receiver of the defendant as an insolvent corporation was appointed by the Chancellor. On May 27th, 1914, the rule to show cause was discharged. On March 5th, 1914, judgment final was entered as of June 3d, 1913. *Held*, that the judgment *nisi* entered on June 3d, 1913, bound the lands of which the judgment debtor was then seized, title to which, subject to said lien, passed to the receiver on June 10th, 1913.

3. The case of *Erie Railway Co.* v. *Ackerson*, 33 *N. J. L.* 33, followed.
4. The case of *McNamara* v. *New York, Lake Erie and Western Railroad Co.*, 56 *N. J. L.* 56, explained.

On opinion certified to the Court of Chancery.

· This is a proceeding under section 79 of the Chancery act, which provides that the Court of Chancery may send any matter of law to the Supreme Court for its opinion to be certified thereon. Pursuant to this statute an order was made in a cause pending in the Court of Chancery upon the advice of. Vice Chancellor Stevens, who filed the following memorandum, in which the matter of law is stated and the question propounded:

This is an appeal of Rose Zamelsky, administratrix, from the determination of the receiver. It appears that on June 3d, 1913, on the filing of the *postea* in an action of tort, Mrs. Zamelsky obtained a rule for judgment, or judgment *nisi,* in the Supreme Court for $6,000. The verdict had been against the Russell-Robinson Company and William L. Blanchard Company. A rule to show cause had, on May 27th, 1913, been granted by the Circuit judge, with the result that the Supreme Court *in banc* set aside the verdict against the Blanchard company and allowed it to stand against the Russell-Robinson Company.

The rule for judgment *nisi* (if such it may be called) was entered in the minutes of the Supreme Court in the words following:

"It is ordered that judgment be and hereby is entered in favor of plaintiff and against the defendant (the two companies designated in the title of the cause) for the sum of six thousand dollars besides costs to be taxed, *nisi.*

"Entered June 3, 1913.

"On motion of Kalisch & Kalisch, Attys."

The form of the final judgment, as entered on the minutes, is as follows:

"Judgment entered this fifth day of March, A. D. 1914, as of June 3, 1913, for the sum of six thousand dollars damages and seventy-four dollars and thirty-four cents costs.

"W. S. GUMMERE, <i>C. J.</i>"

Between the date of the rule for judgment *nisi* and judgment final the Russell-Robinson Company became and was adjudged insolvent by this court. A receiver was appointed on June 10th, 1913. The company was at that time the owner of real estate from which the receiver has, by sale, realized $6,-203.26. If the rule for judgment *nisi* was a lien upon the land the purchase-money will go to pay the judgment; if not, it will be distributed among the creditors generally.

The Corporation act provides (section 86) that "after payment of all allowances, expenses and costs, and the satisfaction of all special and general liens upon the funds of the corporation to the extent of their lawful priority, the creditors shall be paid proportionately to the amount of their respective debts, excepting mortgage and judgment creditors, where the judgment has not been by confession, for the purpose of preferring creditors."

The act concerning judgments (*Comp. Stat., p.* 2955) provides (1) "that all lands, tenements, hereditaments and real estate shall be and hereby are made liable to be levied upon and sold by executions to be issued on judgments which are or shall be obtained in any court of record in this state. * * * *."

2. "That no judgment shall affect or bind any lands, tenements, hereditaments or real estate but from the time of the actual entry of such judgment on the minutes or records of the court."

The question is whether the rule for judgment *nisi*, or judgment *nisi* (if it be more than a rule), bound the land prior to the receiver's appointment. It could not have become a lien upon the land afterward because the Corporation act (section 68) vests the title to it in the receiver immediately upon his appointment.

In an early edition of *Tidd Pr.* (1807) 813, it is said: "After a general verdict * * * it is incumbent on the prevailing party to enter a rule for judgment *nisi causa* on the *postea* or inquisition with the clerk of the rules."

In an edition of *Archbold's Practice,* published in 1838, it is said (at *p.* 484) that such had been the rule until changed by a rule of all the courts made in 2 *W.* 4; and Chitty, in his *General Practice* (volume 4, page 101), says that by the ancient practice it was in many cases necessary, before signing judgment, to give the opponent notice of the intended proceeding so that he might prepare to take proper measures to prevent such judgment and the execution thereon, as by motion in arrest of judgment, &c., and hence the rule for judgment *nisi.*

From all this it appears that the rule for judgment *nisi causa* was nothing more than a four days' rule to show cause why judgment should not be entered, and such was Mr. Justice Pennington's opinion as appears from his statement (*arguendo*) in *Young* v. *McPherson,* 3 *N. J. L.* 897. He remarks: "What is called a judgment *nisi* is nothing more than a rule to show cause why judgment should not be rendered." From this passage it would seem that members of the bar, even at that day (A. D. 1811), were calling the docket entry not a rule for judgment *nisi causa,* but a judgment *nisi,* and the change of name seems to have been attended with a change in the practice, for Judge Elmer, in *Erie Railroad Co.* v. *Ackerson* (A. D. 1868), 33 *Id.* 33, uses the terms "rule for judgment *nisi causa*" and "judgment *nisi,*" as if synonymous and says: "According to the practice of the King's Bench in England a final judgment was not entered until the lapse of four days after the rule for judgment *nisi,* during which time the defendant might move for a rule to show cause or present a writ of error. This delay has been abolished by our rules which permit a rule to show cause to be moved for during the term (*i. e.,* the term in which the trial is had, old rule 30) and by the provisions of an act respecting writs of error. *Nix. Dig.* 262. The established practice of this court is that the plaintiff may issue his

execution immediately after the entry of the judgment *nisi*, if he thinks proper to do so, at the risk, however, of having it rendered a nullity by the rule to show cause being allowed ·absolutely and without directing the entry of a final judgment for the protection of the plaintiff and subject also to the execution being superseded if a writ of error is presented and a recognizance of bail perfected, as required by the aforesaid act."

The seventh section of the act respecting writs of error above referred to reads as follows: "No execution shall be stayed or delayed * * * by any writ of error or *supersedeas* thereon after verdict and judgment on such verdict unless such recognizance as is prescribed in the preceding section shall be first acknowledged as hereinafter directed."

The question then is whether a judgment *nisi* is such a judgment as under section 2 of the Judgment act binds lands from the time of its actual entry and such a judgment as is entitled to priority of payment under section 86 of the Corporation act which prescribes in what order claims against insolvent corporations shall be paid.

I think no distinction can be made between the meaning of the word "judgment" in the Corporation act and its meaning in the act respecting judgments. Sections 1 and 2 of the latter act (quoted above) were passed in 1799 (*Elm. Dig.* 486), and were then sections 1 and 2 of the act entitled "An act making lands liable to be sold for the payment of debts." The only levy and sale authorized by section 1 was a levy and sale "by executions to be issued on judgments;" which judgments, by section 2, were to bind lands only from the time of actual entry. If a judgment *nisi* be a judgment within the meaning of this act, it cannot be otherwise, within the meaning of the Corporation act. This inevitably follows from the decision of the Court of Errors and Appeals in *Doane* v. *Millville Insurance Co.*, 45 *N. J. Eq.* 282, where Mr. Justice Dixon says that judgment creditors are preferred only so far as they have acquired liens. Their lien upon land is given by the sections quoted from the Judgment act transferred from

"the act making lands liable to be sold for the payment of debts."

Is then the judgment in question a judgment within the meaning of the Judgment act? Its form, and the fact that execution may issue upon it, favor an affirmative answer. The form of the entry is "ordered that judgment be *and hereby is entered*" for the sum specified. This seems to be a declaration by the court that the entry is not merely a rule but a judgment. While the entry is allowed thus to stand on the minutes, it would seem as if this court at least was not at liberty to call it anything else. I have requested the clerk of the Supreme Court to examine the entries of rules for judgment *nisi,* as they were entered at the time (A. D. 1868) when Judge Elmer wrote his opinion, and he tells me they were substantially in the same form as the entry now under consideration.

Judge Elmer says that it was then the established practice that the plaintiff might issue execution immediately after the entry of the judgment *nisi,* and the clerk informs me that this practice is still followed. To issue execution on a mere rule would be an anomaly; and it would not accord with the statute of judgments, which says that lands are liable to be levied upon and sold by executions to be issued on *judgments.* No authority is given to issue them on anything else.

However specious this reasoning, I cannot reconcile it with the decision of the late Chief Justice Depue in the case of *McNamara* v. *New York, Lake Erie and Western Railroad,* 56 *N. J. L.* 56. That case was in all respects identical with the case now before the court. The action was tort. There was a verdict; a rule to show cause by the justice who tried the case; an entry of judgment *nisi;* a subsequent discharge of the rule; judgment final entered *nunc pro tunc* and a receivership intervening between the date of the entry of the judgment *nisi* and of the judgment final. On these facts it was held that while the judgment final might be entered *nunc pro tunc,* the date of its actual entry must be expressed, and that only from such date would the judgment be a lien upon real estate. Justice Depue says: "Judgment entered

at this time, as of a prior day, cannot, under the statutes referred to, *have relation as a lien upon the defendant's property prior to the date of actual entry,* and if execution be issued thereon, the command of the writ will be to levy upon the lands, tenements and hereditaments whereof the defendant was seized at the time of the actual entry of the judgment. * * * The defendant's property is in the hands of the receiver and under the control of the federal court. * * * An execution, if issued, would be of no avail against the defendant's property."

It does not expressly appear in the opinion that judgment *nisi* had been entered, but the minutes of the court show that it was, and in the same form in which it was entered here—the entry was "ordered that judgment be *and hereby is* entered * * * *nisi.*"

The aim of the experienced practitioners who made the application in that case was to secure for their client a lien upon the lands in the hands of the receiver which should antedate the receivership. The Supreme Court apparently refused to give it to them. If they had it already in the judgment *nisi,* why should they have applied and why should the Supreme Court have taken pains to say that judgment final entered *nunc pro tunc* as of the date of the judgment *nisi* would only bind lands from the date of its actual entry? One would have thought that the court would have said, if it had supposed that the judgment *nisi* gave a lien, "it makes no difference when the lien of the judgment final first attaches because you have a lien already." As our present Corporation act expressly vests the legal title to all the property of the insolvent corporation in the receiver immediately upon his appointment, there can be no lien, not even an apparent lien, unless it attaches prior to that time.

It seems to me that in view of this situation it would be unbecoming in an equity judge to express an opinion upon a point of practice so peculiarly within the province of the Supreme Court and of such great practical importance. Fortunately, the Chancellor has power to refer the question to

the Supreme Court under section 79 of the Chancery act (*Pamph. L.* 1902, *p.* 537), and this is a case in which I think it is more than proper to exercise it. An order will be made referring the question of the effect of the judgment *nisi* to that tribunal.

The order advised by Vice Chancellor Stevens is as follows: "The Chancellor sends the following questions or matter of law to the Supreme Court for its opinion to be certified thereon; that is to say—

"*First.* Is the above entry on the minutes of the Supreme Court dated June 3d, 1913, a judgment on which execution may issue, or is it a rule for judgment *nisi causa* on which no execution can issue?

"*Second.* Is such entry standing alone a judgment that affected or bound the aforesaid lands from the time of its actual entry on the minutes of the Supreme Court within the meaning of section 2 of the act concerning judgments?

"*Third.* Did the entry of judgment final, on March 5th, 1914, have the effect of so altering or qualifying the effect of the entry or judgment *nisi* of June 3d, 1913, that the judgment in the action can only operate as a lien upon real estate from the date of its actual entry on March 5th, 1914?

"*Fourth.* Is there any judgment in said action which now relates back, so that it binds the said lands of the Russell-Robinson Company, title to which passed by operation of law (section 68 of Corporation act) to the receiver on June 10th, 1913, or the money into which they have been converted?

"And it is further ordered that upon the return of such certificate the respective parties may apply for such further order or adjudication as may be proper.

"E. R. WALKER, *C.*

"Respectfully advised,
  "FREDERIC W. STEVENS, *V. C.*"

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and MINTURN.

For the receiver, *Lum, Tamblyn & Colyer* and *Gilbert Collins.*

For the claimant, *Kalisch & Kalisch.*

The opinion of the court was delivered by

GARRISON, J. The judgment entered on June 3d, 1913, is one upon which execution may issue. This was expressly decided in *Erie Railway Co.* v. *Ackerman* (1868), 33 *N. J. L.* 33. This decision has not been overruled.

The case of *McNamara* v. *New York, Lake Erie and Western Railroad Co.* (1893), 56 *N. J. L.* 56, dealt not with the effect of a judgment *nisi* entered prior to the discharge of an outstanding rule to show cause, but solely with the effect of a judgment final entered after such a rule had been discharged, holding with respect to such final judgment that although entered *nunc pro tunc* as of the time of the filing of the *postea,* it would be a lien on lands only from the date of its actual entry.

There is no conflict between the rule stated by Judge Elmer in the earlier case and that stated by Judge Depue in the later one; they are to be read together. The practice thus laid down is that upon filing the *postea* a judgment *nisi* may be entered upon which, notwithstanding a rule to show cause has been allowed, an execution may issue, which will, however, be rendered void if such rule is made absolute, but which, if such rule is discharged and judgment final is entered as of the date of such judgment *nisi,* remains in full force and effect as to lands of which the judgment debtor was seized at the time of the actual entry of such judgment *nisi;* but this result cannot be obtained by the mere entry of judgment final *nunc pro tunc* as of the time of the filing of the *postea.* This last clause is the contribution of the McNamara case and is all that that case decided upon this point, as appears by the opinion of Mr. Justice Depue, who cited the earlier case of Erie Railroad Co. *v.* Ackerson, without a suggestion that it was disapproved, still less that it was repudiated and overruled. To overrule a practice decision of

twenty-five years' standing in any such fashion as this would be at total variance with the judicial habit of this court, and pre-eminently so in the case of Mr. Justice Depue, whose punctiliousness as a practitioner was only equaled by his solicitude for *stare decisis*.

The fact now shown to us that a judgment *nisi* had been entered in the McNamara case does not alter the fact that such judgment was not placed before the court for its opinion as to its force and effect, but that such opinion was rendered solely as to the effect of a judgment final if entered *nunc pro tunc* as of the time when the plaintiff was entitled to enter a judgment *nisi* which the court evidently thought had not been entered, and hence expressed no opinion concerning it.

Upon no other theory is it possible to explain the fact that Judge Depue, on two occasions, went out of his way to suggest the proper practice as to the entry of judgment *nisi*, evidently under the impression that it had not been followed. The opinion opens with the recital that "in the regular course of proceeding the *postea would have been* filed and *judgment entered* thereon at the term of February, 1893," and it closes with this significant paragraph: "It may be added that the proper practice under this rule is to enter judgment *nisi* on the coming in of the *postea*, although the trial judge has previously granted a rule to show cause."

It is inconceivable that this advice would have been tendered if the writer of the opinion was not under the impression that it had not been followed.

Another circumstance tending to the same end is that the notice by which the matter was brought to the attention of the court is entirely silent as to the existence of a judgment *nisi*, and that the notice given was of an application to order the judgment on the *postea* and discharge of the rule to show cause *nunc pro tunc*, from which it would appear that counsel as well as the court understood that the sole question presented by the motion was as to the entry of the judgment final and the date at which it took effect as a lien upon lands.

The learned Vice Chancellor has therefore correctly conceived and stated the practice in this court saving as to the

doubts he expressed as to the effect of the McNamara case upon the established practice stated in the case of Erie Railway Co. *v.* Ackerson.

The Court of Chancery in response to the questions propounded to this court is therefore certified that the judgment *nisi* entered on June 3d, 1913, bound the lands of the judgment debtor under section 2 of the act concerning judgments, and that entry of judgment final, on March 5th, 1914, *nunc pro tunc,* did not affect this result adversely to the plaintiff, and hence, that the said judgment of April 13th, 1913, bound the lands of the judgment debtor title to which passed to the receiver on June 10th, 1913.

Other questions argued by counsel for the receiver, but not referred to us by the Court of Chancery, have for that reason received no attention under this strictly statutory proceeding.

Let the Court of Chancery be certified to the foregoing effect.